**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GAIL POSEY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 06 C 4839<br><br>Magistrate Judge Nan R. Nolan |

## MEMORANDUM OPINION AND ORDER

This is an appeal from an ALJ's decision denying social security disability benefits to Gail Posey. The ALJ found that Ms. Posey was, despite her severe impairments, capable of performing the jobs of assembler, inspector, and hand packer. Because the ALJ's decision was supported by substantial evidence, the denial of benefits is affirmed.

**I.    Background**

Ms. Posey, who was 42 years old at the time of the hearing before the administrative law judge, claims to have become totally disabled on January 19, 2003 due to swelling arms, legs, and face, high blood pressure, and a heart murmur. Ms. Posey has a history of a urticaria,[1] hypertension, and a heart murmur. Ms. Posey says that she cannot walk more than a half a block without stopping to rest. She claims that she can only stand for a half an hour at a time, that her legs swell up and she has to lay down if she sits for more than a half an hour at one time, and that she cannot lift more than five pounds. Ms. Posey

---

[1] "Urticaria is a condition characterized by the eruption of papules or wheals on the skin associated with severe itching. This condition is also referred to as hives or nettle rash." Brown v. Barnhart, 2005 WL 991769, at *2 n. 20 (S.D. N.Y. April 27, 2005).

has a high school education and has worked as a nurse's aid, dietary aid, and cashier.

The ALJ applied the familiar five step analysis and found that Ms. Posey had not engaged in substantial gainful activity since the alleged onset date of disability (step one); her urticaria, hypertension, thyroid mass, mild depression/anxiety, obesity, and alcohol abuse are severe impairments (step two); but that they do not qualify as a listed impairment (step three). The ALJ determined that Ms. Posey retained the residual functional capacity to perform a significant range of light work.[2] The ALJ further concluded that Ms. Posey was unable to perform any of her past relevant work (step 4); but that using the grids as a framework, she was able to perform a significant number of jobs in the national economy and was not disabled (step five).

Ms. Posey makes four main arguments in support of her contention that the ALJ's decision is not supported by substantial evidence. None are meritorious.

## II. Discussion

### A. Step Three - Listing of Impairments

Ms. Posey argues that the ALJ should have consulted a medical expert concerning whether she met or equaled the requirements for a listing based on her "goiter diagnosis." Social Security Ruling 96-6p states that an ALJ is required to obtain an updated medical

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

opinion from a medical expert when "additional medical evidence" is received that in the opinion of the ALJ may change the state agency medical consultant's finding that the impairment is not equivalent in severity to a listed impairment.

The state agency physicians who reviewed Ms. Posey's case at the initial and reconsideration levels determined that she did not have a severe impairment. (R. 34-59, 236, 238). After the state agency physicians opined that Ms. Posey did not have severe impairment, she had an ultrasound of her thyroid gland on April 25, 2005. (R. 245). The results of the ultrasound suggested that the enlargement of the right lobe of the thyroid was most likely related to a multinodular goiter and suppressive Synthroid was prescribed. (R. 245, 335).

At the September 28, 2005 hearing, Ms. Posey testified that she began seeing Dr. Kyncl for her thyroid in 2005. (R. 372, 382). The ALJ questioned Ms. Posey regarding her treatment after the ultrasound. (R. 373). Ms. Posey initially claimed that Dr. Kyncl told her to "come back in six weeks." Id. When the ALJ noted that the ultrasound had been done more than five months ago, Ms. Posey stated that Dr. Kyncl "hasn't done anything since. She just been telling me to take that medication." (R. 373). The ALJ then found that Ms. Posey's impairments including her thyroid mass did not meet or equal the requirements for a listing. (R. 27).

The ALJ did not err in failing to consult a medical expert regarding Ms. Posey's goiter diagnosis. In her decision, the ALJ considered the results of the ultrasound of Ms. Posey's thyroid when making her determination. She noted that an ultrasound of the thyroid on April 25, 2005 revealed marked enlargement of the right lobe of the thyroid gland and solid masses seen throughout. (R. 28). The ALJ further noted that Ms. Posey was

prescribed medications for her thyroid mass but no other treatment or tests had been recommended. (R. 27). Ms. Posey cites no evidence suggesting that her thyroid mass or goiter worsened or produced significant work-related limitations. In fact, evidence submitted after the ALJ issued her decision confirms that Ms. Posey's goiter diagnosis would not have changed the state agency physicians' determination. On January 24, 2006, Dr. Scheer noted that Ms. Posey reported a 50% decrease in the size of her thyroid gland as a result of the suppressive medication. (R. 335). Ms. Posey reported some difficulty with breathing which she felt was related to her thyroid gland enlargement but also that her breathing had improved with the medication. Dr. Scheer noted that Ms. Posey still has mild symptoms, mostly at night. Id. Dr. Scheer concluded that Ms. Posey had "responded to suppressive medication and this should continue." Id. Dr. Scheer recommended continuation of the medication and another ultrasound of her thyroid for further evaluation. Id.

Ms. Posey bears the burden of proving that her impairments meet a listing, and she has not identified which specific listing she believes she meets or equals as a result of her goiter diagnosis. Ms. Posey has also not explained how the addition of the goiter diagnosis might have changed the opinion of the state agency physicians that she did not meet or equal criteria of any listed impairment. The ALJ's decision that the goiter diagnosis and thyroid ultrasound would not change that state agency physicians' findings regarding equivalency is therefore supported by substantial evidence.

**B. Residual Functional Capacity Assessment**

**1. Function by Function Assessment**

Ms. Posey claims that the ALJ's Residual Functional Capacity (RFC) assessment is conclusory and contains no rationale or reference to supporting evidence. Ms. Posey also contends that the ALJ's RFC finding fails to comply with SSR 96-8p, which requires the ALJ to conduct a "function by function" assessment of her ability to do work-related activities.

"RFC is an assessment of what work-related activities the claimant can perform despite her limitations." Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001). The ALJ need not include a function-by-function discussion of exertional limitations which the ALJ finds not credible. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.") Moreover, the ALJ need not discuss capacities for which no limitation is alleged. Delgado v. Commissioner of Social Security, 2002 WL 343402, at *4-5 (6th Cir. March 4, 200).

In this case, the ALJ did not merely conclude that Ms. Posey was capable of performing a significant range of light work. The ALJ analyzed Ms. Posey's vocational abilities on a function by function basis. The ALJ concluded that Ms. Posey retains the RFC to frequently lift 10 pounds and occasionally lift 20 pounds; sit for six hours and stand and walk for six hours in an eight-hour workday; could not perform repetitive grasping or fine manipulation or work that required regular general public contact. (R. 27). Ms. Posey fails to identify the function or ability which the ALJ allegedly neglected to address.

The ALJ explained how she arrived at her conclusions. The ALJ's RFC assessment

included consideration of the Ms. Posey's subjective complaints and the medical evidence. The ALJ began by discussing Ms. Posey's alleged symptoms, impairments, and limitations. (R. 27). The ALJ noted that Ms. Posey stated she could not do any of her past jobs because of urticaria which causes swelling mostly of the lips and cheeks and also affects her feet and hands. Id. Ms. Posey said that people do not want to be around her when she has attacks of urticaria. The ALJ next noted that Ms. Posey testified that she could not do other jobs that do not require general public contact because of medication side effects (drowsiness/sleepiness and dizziness) and swelling and numbness of her hands. The ALJ discussed Ms. Posey's thyroid mass and noted that she had been prescribed medications but no other treatment or tests have been recommended. The ALJ noted that Ms. Posey claims to be depressed but has not sought mental health treatment and is not taking any psychotropic medications. Id. The ALJ stated that Ms. Posey believes she is an alcoholic.

      The ALJ reviewed Ms. Posey's testimony regarding her alleged exertional abilities. (R. 27). The ALJ noted that Ms. Posey claimed she was able to sit for only 30 minutes, lift no more than 5 pounds, stand no longer than 30 minutes, and walk a distance of only half a city block. The ALJ considered Ms. Posey's claimed limited activities of daily living: no household cleaning or dish washing, only occasional cooking and preparing meals, does her own laundry, and no grocery shopping. (R. 28). The ALJ found Ms. Posey's allegations regarding her limited daily activities not credible because they were not verifiable to any reasonable degree of certainty and the medical evidence did not support the degree of limitation alleged. (R. 29).

      The ALJ reviewed the medical evidence and concluded that Ms. Posey's complaints

exceeded the objective medical evidence. (R. 28). The ALJ noted that treatment records reflect problems with swelling, hives, breathing, peptic ulcer disease, lower back pain, and thyromegaly. Id. The ALJ discussed the June 17, 2004 report of Dr. Ahmari Shaikh. (R. 28, 212-15). The ALJ noted that Dr. Shaikh's physical examination of Ms. Posey was essentially normal, except for uncontrolled and untreated (probably because of the risk of allergic reaction) hypertension and mild depression/anxiety. (R. 28). The ALJ also noted that Ms. Posey reported a history of thyroid mass but displayed no symptoms of hyperthyroidism. Id. Ms. Posey reported a history of a heart murmur which appeared stable on examination. Id. The ALJ noted that despite Ms. Posey's complaints of back pain, she demonstrated full ranges of motion of the spine and joints and full strength throughout. The ALJ considered the results of the ultrasound of Ms. Posey's thyroid on April 25, 2005 which revealed marked enlargement of the right lobe of the thyroid gland with cystic and solid masses seen throughout. (R. 28).

The ALJ discussed two reports completed by Ms. Posey's treating family practitioner, Dr. Daisy Andaleon. The ALJ noted that both reports indicate that Ms. Posey has frequent, severe urticaria (swelling) with edema which, along with medication side effects, prevent her from working a regular job. (R. 29). The ALJ found both reports conclusory and without a sufficient explanation of the evidence relied on in forming the opinion. Id. The ALJ further noted that Dr. Andaleon described no specific functional limitations and placed no restrictions on Ms. Posey's physical activity. Id.; see also (R. 198). The ALJ accorded little weight to Dr. Andaleon's opinion that Ms. Posey was unable to work because the treatment Dr. Andaleon provided was not consistent with what one would expect if Ms. Posey was truly disabled and Dr. Andaleon's opinion was not supported

by other evidence in the record. (R. 29). An ALJ must "give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). Because Dr. Andaleon's conclusory opinion did not meet this standard, the ALJ properly discounted her opinion. Dixon, 270 at 1177 (7th Cir. 2001) (stating "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work.").

Finally, the ALJ noted that Ms. Posey submitted an unsigned residual functional capacity assessment report dated May 31, 2005 which was purportedly completed by Dr. Andaleon. (R. 29; 293-96). The report indicates a diagnosis of thyroid disease and its assessment would preclude the performance of even sedentary work. (R. 29). The ALJ accurately noted that the form "does not appear to be completed by Dr. [Anadeleon]." (R. 367). The ALJ also properly denied Ms. Posey's attorney's request to leave the record open to obtain the doctor's signature. It was not the ALJ's fault that Dr. Andaleon failed to sign the report and Ms. Posey's counsel failed to get the May 31, 2005 report signed prior to the September 28, 2005 hearing. Moreover, the ALJ explained that even if the signature were obtained, it would not change the ultimate conclusions because the opinions in the unsigned report were not supported by medically acceptable clinical and laboratory diagnostic techniques and were not consistent with other substantial evidence in the case. (R. 29).[3]

---

[3] The unsigned report purportedly completed by Dr. Andaleon is inconsistent with some of her own later findings. For example, the unsigned May 31, 2005 report indicates that Ms. Posey can lift only 5 pounds and can never lift 10 pounds or more. (R. 295). On a form dated October 13, 2005 (just days before the ALJ's October 18, 2005 decision), Dr.

The ALJ concluded that the objective medical evidence did not provide a basis for finding limitations greater than those found by the ALJ. (R. 28). The ALJ found that Ms. Posey has not received the type of medical treatment one would expect for a totally disabled person. (R. 28). The ALJ noted that Ms. Posey made relatively infrequent trips to the doctor and the treatment she has received has been essentially routine and/or conservative in nature. (R. 29).

The ALJ found Ms. Posey's testimony not fully credible. (R. 28). The ALJ noted that although Ms. Posey claimed she was able to sit for only 30 minutes, she sat through the 45-minute hearing with no apparent difficulty. The ALJ further noted that Ms. Posey admitted sitting through 2-hour church services every week. (R. 27). Ms. Posey admitted at the hearing that she sat for "a little better than an hour" on the train ride to the hearing without problems. (R. 385). The ALJ further noted that Ms. Posey claims to suffer from depression, but has not sought any mental health treatment and is not taking any psychotropic medications. (R. 28). Regarding her ability to work, the ALJ stated that Ms. Posey shifted her answers to fit the questions posed at the hearing. Initially, Ms. Posey testified that she could not do her past jobs because of urticaria which causes swelling. Ms. Posey said people do not want to be around her when she has attacks of urticaria. The ALJ noted that when asked why she could not do other jobs that do no require general public contact, Ms. Posey stated that she could not work because of medication side-effects (drowsiness/sleepiness and dizziness) and swelling and numbness of the hands.

---

Andaleon opined that Ms. Posey could occasionally lift 20 pounds and frequently lift 10 pounds. (R. 312). This is the same lifting capacity found by the ALJ. (R. 27). Five days later on October 18, 2005, Dr. Andaleon indicated that Ms. Posey could only occasionally lift less than 10 pounds and apparently never lift 10 pounds or more. (R. 327).

Id. The ALJ also based her RFC assessment on the state physicians' determination that Ms. Posey did not even have a "severe" impairment within the meaning of the regulations. (R. 29); Flener v. Barnhart, 361 F.3d 442, 448 (7th Cir. 2000) (stating "it is appropriate for an ALJ to rely on the opinions of [state agency] physicians and psychologists who are also experts in social security disability evaluation."); 20 C.F.R. § 404.1527(f). Because the ALJ made the required findings, her RFC determination is supported by substantial evidence.

### 2. Consultative Examination

Ms. Posey also thinks the ALJ should have ordered a consultative exam. In support of her position, Ms. Posey points out that the record is devoid of any RFC assessments from any of the state agency physicians. Ms. Posey contends that SSR 83-10 required that the ALJ obtain a consultative examination to assess her RFC.[4]

An ALJ has an obligation to develop a full and fair record and may order a consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. §§ 404.1519a(b), 416.919a(b); Thompson v. Sullivan, 933 F.2d 581, 586 (7th Cir. 1991). An ALJ must consider both medical and non-medical evidence in making an RFC assessment, but the final determination of RFC is reserved to the ALJ, not a physician. Diaz, 55 F.3d at 306 n.2 (stating "[t]he determination of RFC . . . is an issue reserved to the SSA"). Courts generally defer to an ALJ's assessment of how much evidence to gather. Flener, 361 F.3d at 448 (stating "because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should

---

[4] SSR 83-10 has nothing to do with consultative examinations. That Ruling addresses RFC and the application of the Grids.

generally be respected.").

Here, one consultative examination was ordered and performed by Dr. Shaikh, who recorded essentially normal findings. ALJ Bretthauer relied in part on Dr. Shaikh's findings in making an RFC determination. (R. 28). The RFC determination reached by the ALJ was also more favorable to Ms. Posey than the findings by the state agency physicians. Two agency physicians (Drs. Pilapil and Jimenez) reviewed the record and concluded that Ms. Posey did not even have a severe impairment within the meaning of the regulations. (R. 34-59, 236, 238). Because the record contained sufficient information for the ALJ to make an informed decision as to Ms. Posey's alleged disability, the ALJ did not err in failing to order an additional consultative examination. The Court defers to ALJ Bretthauer's decision that an additional consultative examination was not necessary to adequately develop the record.

**C.    Obesity**

Ms. Posey next claims that the ALJ failed to consider the combined effects of her impairments, including her obesity. Ms. Posey contends that the ALJ should have called a medical expert to determine if her obesity exacerbated her other medical problems.

Obesity is not itself an impairment, limitation, or disability; rather it is a cause of impairment. Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir. 2006). "Sometimes . . . obesity or some other health condition merely aggravates a disability caused by something else; it still must be considered for its incremental effect on the disability. . . ." Id. SSR 02-1p "requires an ALJ to consider the effects of obesity at several points in the five-step process." Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004); see also 20 C.F.R. §§ 404.1523; 416.923 (stating in assessing residual functional capacity, an ALJ is required to

consider the combined effects of all of the claimant's impairments.).

The ALJ considered the combined effect of Ms. Posey's impairments and did not err in her treatment of Ms. Posey's obesity. Contrary to Ms. Posey's contention, the ALJ did not fail to mention her obesity. At step 2 of the sequential evaluation, the ALJ acknowledged that Ms. Posey's obesity was severe, meaning "it significantly limits [her] physical or mental ability to do basic work activities." SSR 02-1p; see (R. 27). The medical records are devoid, however, of any suggestion that Ms. Posey's weight adversely limited her ability to perform the range of light work set forth by the ALJ or aggravated her other impairments so as to render them disabling. None of the physicians, including Ms. Posey's treating physician, indicated that her obesity played a part in her limitations or affected her other conditions.

Ms. Posey's obesity is also not extreme. See Johnson v. Barnhart, 449 F.3d 804, 807 (7th Cir. 2006). Ms. Posey's weight has fluctuated, but assuming a weight of 204 pounds (the rough average of all of the recorded weights in the record), her Body Mass Index[5] of 33.94 (204 lbs. X 703/(65 inches) 2) places her in obesity class 1, the lowest class. Id.; see National Institutes of Health, *The Practical Guide: Identification, Evaluation, and Treatment of Overweight and Obesity in Adults*, www.nhlbi.nih.gov/guidelines/obesity/prctgd_c.pdf.[6]

Moreover, the ALJ did consider the impact of Ms. Posey's obesity by relying on the

---

[5] BMI is the ratio of the person's weight in kilograms to the square of her height in meters. SSR 02-1P.

[6] On April 29, 2004, Dr. Andaleon noted that Ms. Posey weighed 200¾ pounds. (R. 196). At the September 28, 2005 hearing, Ms. Posey testified that she weighed 200 pounds. (R. 389).

report of Dr. Shaikh who noted that Ms. Posey weighed 211¾ pounds during his consultative examination. (R. 28, 213). Despite her weight, Dr. Shaikh observed that Ms. Posey had a normal range of motion in her spine and all joints, her straight leg raising was normal, there was no swelling, tenderness, or erythema noted in any joints, her gait was normal, she could bear weight on both legs, she does not use or need any assistive device to ambulate, her grip strength was 5/5, and her fine and gross motor skills were normal. Based on his examination, Dr. Shaikh concluded that Ms. Posey had a history of urticaria with questionable etiology, a history of a thyroid mass with no symptoms of hyperthyroidism, a history of uncontrolled blood pressure, a history of a heart murmur which appeared stable, and anxiety and slight depression. (R. 214-15). By relying in part on Dr. Shaikh's report in assessing Ms. Posey's residual functional capacity, the ALJ adequately accounted for Ms. Posey's obesity. Skarbek, 390 F.3d at 504.

The ALJ was also not required to obtain an expert's opinion on the combined effect of Ms. Posey's impairments. Ms. Posey has failed to explain by providing testimony or citing evidence how her obesity caused limitations not accounted for by the ALJ's RFC determination. By failing to point to any testimony or evidence indicating how her obesity aggravated her impairments or caused limitations not accounted for by the ALJ's RFC determination, Ms. Posey has not shown that an expert opinion beyond the state agency physicians at the initial and reconsideration levels would have led to a different result. The evidence was adequate for the ALJ to find Ms. Posey not disabled, and the ALJ acted within her discretion in deciding not to call a medical expert. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii).

    **D.**    **Hypothetical Question**

Ms. Posey argues that the three jobs identified by the VE were made in response to the ALJ's first hypothetical question which contained limitations for medium rather than light work. Ms. Posey says that the VE's response to the second hypothetical question "does not address the exertional level, but merely notes that all three specified jobs required frequent, but not constant or repetitive activities." Pl's memo. at 12. Ms. Posey is wrong. The second hypothetical exchange between the ALJ and the VE was as follows:

> Q   And if I were to change the exertional level to light, someone who can lift and carry frequently up to 10 lbs., occasionally also adding no repetitive grasping and fine manipulation. Could you give me examples of jobs such a person could perform?
>
> A   Yes. These jobs require frequent, but not constant or repetitive activities. The general assembly at the *light* level, 20,000 lbs., I'm sorry, 20,000 jobs; inspection, 4000; and hand packing, 10,000.

(R. 392-93) (emphasis added). The ALJ's second hypothetical clearly contained limitations for light work and the VE's response was based on light work. The second hypothetical question incorporated all of Ms. Posey's limitations supported by medical evidence in the record, and the ALJ reasonably relied on the VE's testimony.

Ms. Posey also asserts that the ALJ's finding that she could perform no repetitive grasping or fine manipulations is inconsistent with the VE's identification of jobs requiring frequent hand activities. Ms. Posey's limitation on repetitive hand activities does not preclude jobs involving frequent hand activities. In response to the second hypothetical which contained limitations for light work and "no repetitive grasping and fine manipulations," the VE explained that the identified jobs require frequent, "but not constant or repetitive activities." The VE understood repetitive to mean constant. The Dictionary of Occupational Titles ("DOT") does not use the term repetitive. The Selected Characteristics

of the Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), the DOT's supplement, uses the terms occasionally, frequently, and constantly to describe the frequency of physical demand components of occupations. *Selected Characteristics of the Occupations Defined in the Revised Dictionary of Occupational Titles*, App. C, Physical Demands (1993). Constant and frequent are not synonymous. Constant is defined as an activity or condition that exists ⅔ or more of the time, and frequent is defined as an activity or condition that occurs ⅓ to ⅔ of the time. Because the VE equated repetitive and constant, there is no conflict between his testimony and the ALJ's RFC finding.

In her reply brief, Ms. Posey assert that the ALJ erred in accepting the VE's testimony because the jobs the VE proposed, as defined by the DOT, may require physical capacities beyond her capabilities. Ms. Posey has waived this argument by failing to raise it in her opening memorandum. It is too late to raise arguments for the first time in a reply because the Commissioner has been denied an opportunity to respond. Moreover, the ALJ asked the VE if any of the evidence he provided conflicted with the DOT or SCO and the VE responded that it did not. (R. 393). If Ms. Posey was not satisfied with the VE's assertion that his testimony did not conflict with the DOT, her attorney should have cross-examined him. Ms. Posey's attorney did not cross-examine the VE on this issue or ask him to describe the job requirements of the three jobs in more detail.

### III.     Conclusion

For these reasons, Plaintiff Gail Posey's Motion for Summary Judgment is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed. The Clerk is directed to enter final judgment in favor of the Commissioner and against the Plaintiff in accordance with Rule 58 of the Federal Rules of Civil Procedure.

E N T E R:

*Nan R. Nolan* (signature)

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: August 17, 2007**